1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   John Mark Raudelunas,                          No. 2:21-cv-00394-KJM-JDP

12                    Plaintiff,                     ORDER

13           v.

14   City of Vallejo, et al.,

15                    Defendants.

16

17          Plaintiff John Mark Raudelunas brings this § 1983 action against defendants City of

18   Vallejo (the City), Vallejo Police Department (VPD), Former Chief Andrew Bidou, VPD Chief

19   Shawny Williams, Officer Jodi Brown, Sergeant Steve Darden, Officer Zach Horton and Fire

20   Captain Jason Goodner,[1] alleging he was the victim of excessive force when Officer Brown tased

21   him at his driveway, in violation of his constitutional rights.  The City of Vallejo moves to

22   dismiss the bulk of the amended complaint for failure to state a claim under Federal Rule of Civil

---

[1] Plaintiff also indicates there are Doe defendants.  Plaintiff is reminded that if defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them.  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds.  *Id.*.  The federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint.  Fed. R. Civ. P. 4(m).

1

1   Procedure 12 (b)(6), except for certain claims against the City and defendants Brown and Horton,

2   and also moves to strike redundant claims under Federal Rule of Civil Procedure 12 (f).  **The**

3   **court grants the motion in part and denies it in part.**

4   **I.      FACTUAL ALLEGATIONS**

5          **A.      Incorporation by Reference of Video Footage**

6          The court first addresses its *sua sponte* incorporation by reference of defendants' CD-

7   ROM copy of the video footage from Officer Brown's body camera lodged with the court, *see*

8   Defs.' RJN., Ex. A (Ex. A), ECF No. 9; *Boyman v. Disney Enters., Inc.*, No. CV 17-8827,

9   2018 WL 5094902, at *2 n.3 (C.D. Cal. June 1, 2018) (court incorporates by reference "videos

10  lodged" with the court), because this incorporation affects the factual allegations that are relevant

11  to the motion to dismiss.  *See generally* Mot., ECF No. 7.

12         In the operative complaint, Mr. Raudelunas references the "video of the incident" and

13  alleges it makes "clear . . . [that] Officer Brown [was] never under any sort of threat whatsoever

14  at any time."  First Am. Compl. (FAC) ¶ 31, ECF No. 5.  He further notes there are "obvious

15  discrepancies" between Officer Brown's "version of events and the video evidence."  *Id.* ¶ 33.  In

16  evaluating a Rule 12(b)(6) motion, the court's review is ordinarily limited to the content of the

17  complaint and material properly submitted with the complaint.  *Knievel v. ESPN*, 393 F.3d 1068,

18  1076 (9th Cir. 2005).  Under the incorporation by reference doctrine, the court may also *sua*

19  *sponte* consider materials whose contents are alleged in a complaint and whose authenticity no

20  party questions, but that are not physically attached to the pleading.  *In re Tesla, Inc. Sec. Litig.*,

21  477 F. Supp. 3d 903, 935 n.12 (N.D. Cal. 2020).

22         Because plaintiff references and relies on the video footage explicitly in his amended

23  complaint and has not disputed its authenticity or accuracy, *see generally* Opp'n; *Khoja v.*

24  *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018), the court *sua sponte*

25  incorporates by reference the CD-ROM copy of the video footage from Officer Brown's body

26  camera surrounding plaintiff's arrest and considers it in deciding defendants' motion to dismiss

1  without converting the motion to one for summary judgment.[2]  Specifically, the court

2  incorporates only content regarding allegations that plaintiff left the scene of the accident, was

3  followed to his home by Officer Brown and was tased once by Officer Brown.  *Khoja*, 899 F.3d at

4  1003 (cautioning against resolving factual disputes at pleading stage); *J. K. J. v. City of San*

5  *Diego*, 17 F.4th 1247, 1254 (9th Cir. 2021) (affirming trial court's decision to review bodycam

6  video plaintiff incorporated by reference into amended complaint, without giving video too much

7  weight; to extent video contradicted anything in amended complaint, court rejected plaintiff's

8  conclusory allegations).

9           **B.      Review of Facts Alleged**

10          John Mark Raudelunas is a 71 year old resident of the City of Vallejo.  FAC ¶ 1.  He is

11  disabled and wears hearing aids.  *Id.*  ¶¶ 1, 29.  On August 19, 2019, at approximately 5:15 p.m.,

12  Mr. Raudelunas was driving his vehicle at or near his home at 1338 Nebraska St., when another

13  motorist speeding away threw an object out of his car and through plaintiff's open window,

14  hitting Mr. Raudelunas on the head.  *Id.* ¶¶ 25–26.  Mr. Raudelunas pursued the motorist and

15  collided with a vehicle in traffic.  *Id.* ¶¶ 26, 31.  Officer Jodi Brown arrived at the scene and asked

16  Mr. Raudelunas for his license and registration.  *Id.* ¶ 27.  In response, Mr. Raudelunas handed

17  Officer Brown a stack of papers that included his license and registration.  *Id.*  When Officer

18  Brown refused to accept the stack of documents Mr. Raudelunas got into his car.  *Id.*  Officer

19  Brown warned Mr. Raudelunas repeatedly that he was not permitted to leave the scene of the

20  accident.  Ex. A at :29–:35.[3]  Mr. Raudelunas drove away and headed home, a short distance

21  away.  *See id.*; FAC ¶ 27.

22  /////

---

[2] Defendants request the court take judicial notice of defendants' video lodged with this court as well as the Vallejo police report pertaining to the underlying accident, Defs.' RJN, Ex. B, ECF No. 9 (sealed).  *See* ECF No. 9.  The court **denies** defendants' request for judicial notice regarding the video as **moot** in light of the court's incorporating only the video footage by reference.  Given that the video of the incident is in the record, the court **denies** the request for judicial notice of the police report containing the officers' narrative of the incident.

[3] When citing to Exhibit A, the court identifies the relevant time stamps appearing on the video footage.

1    Officer Brown followed Mr. Raudelunas in her car, with sirens and lights on.  Ex. A at

2    1:30–2:53.  As soon as Mr. Raudelunas pulled into his driveway, Officer Brown parked and

3    exited her car.  *Id*. at 2:53-3:02.  She gave Mr. Raudelunas four loud commands to get on the

4    ground.  *Id*.  Mr. Raudelunas ignored the commands and appeared to be reaching back into his

5    truck when Officer Brown "deployed [her] taser, "shoot[ing] him point blank" on his lower chest.

6    *See id*. at 2:54–3:04; FAC ¶¶ 29, 32.  Mr. Raudelunas lost control of his muscles and fell to the

7    ground.  Ex. A at 3:05–4:00; FAC ¶ 32.  He suffered "significant injury" from the taser impact

8    and from falling to the concrete driveway.  FAC ¶ 34.

9    Mr. Raudelunas alleges he told Officer Brown that he uses hearing aids and has back

10   problems.  *Id*. ¶ 29.  However, he did not verbalize a need for immediate medical attention.

11   Ex. A at 4:05–8:53.  Mr. Raudelunas alleges Officer Brown disregarded his need for medical aid.

12   FAC ¶¶ 29–30.  As a result of this experience, Mr. Raudelunas has been diagnosed with post-

13   traumatic stress disorder (PTSD).  *Id*. ¶ 35.

14   Mr. Raudelunas asserts twenty standalone claims against defendants.  The court

15   summarizes them below:

16   Under 42 U.S.C. § 1983 plaintiff asserts the following violations of his Fourth

17   Amendment rights against individual defendants:

18   • Excessive force against Officer Jodi Brown, Sergeant Steve Darden, Officer Zach
19   Horton and Fire Captain Jason Goodner (claim 1).  *Id*. at 22–23.

20   • False arrest against Officer Jodi Brown, Sergeant Steve Darden, Officer Zach
21   Horton and Fire Captain Jason Goodner (claim 2).  *Id.* at 23.

22   • False imprisonment against Officer Jodi Brown, Sergeant Steve Darden, Officer
23   Zach Horton and Fire Captain Jason Goodner (claim 3).  *Id.* at 23–24.

24   • Failure to render medical aid against Officer Jodi Brown, Sergeant Steve
25   Darden, Officer Zach Horton and Fire Captain Jason Goodner (claim 4).  *Id.* at 24–
26   25.

27   /////

28   /////

4

1          Plaintiff asserts a federal civil conspiracy claim under 42 U.S.C. § 1985 against Officer

2     Jodi Brown, Sergeant Steve Darden and Fire Captain Jason Goodner (claim 5).  *Id*. at 25–26.[4]

3          Plaintiff asserts four Fourth Amendment claims under § 1983 against the City of Vallejo,

4     VPD Former Chief Andrew Bidou and VPD Chief Shawny Williams alleging liability based on

5     *Monell v. Department of Social Services*, 436 U.S. 658 (1978) based on the following theories:

6             &bull;  Ultimate Policymaker (claim 6);

7             &bull;  Failure to Train and Supervise (claim 7);

8             &bull;  Longstanding Pattern, Practice & Policy (claim 8);

9             &bull;  Ratification (claim 9).  FAC at 26–32.

10    Plaintiff asserts the following state claims:

11            &bull;  Assault (claim 10) against City of Vallejo, Officer Jodi Brown and Officer Zach

12                  Horton.  *Id*. at 33.

13            &bull;  Battery (claim 11) against City of Vallejo, Officer Jodi Brown, Sergeant Steve

14                  Darden and Officer Zach Horton.  *Id*.

15            &bull;  False arrest (claim 12) against City of Vallejo, Officer Jodi Brown, Sergeant Steve

16                  Darden, Officer Zach Horton, Fire Captain Jason Goodner and Does 1–50.  *Id*. at

17                  34.

18            &bull;  Excessive force in violation of the California Bane Act (claim 13) against City of

19                  Vallejo, Officer Jodi Brown, Sergeant Steve Darden, Officer Zach Horton and Fire

20                  Captain Jason Goodner.  *Id*. at 34–35.

21            &bull;  Intentional infliction of emotional distress (claim 14) against Officer Jodi Brown.

22                  *Id*. at 35–36.

23            &bull;  Negligence (claim 15) under California Government Code §§ 820 and 815.2

24                  against all the defendants.  *Id*. at 36–37.

---

[4] Plaintiff also invokes the Fourth and Fourteenth Amendments in pleading this claim but does not elaborate on the facts supporting this aspect of the claim.  FAC ¶ 64 ("Defendants [sic] fabrication and falsification of evidence were overt acts in furtherance of this conspiracy to deprive Mr. Raudelunas the protections of the Fourth Amendment, and substantive due process under the Fourteenth Amendment, to lead to his false arrest and false imprisonment.").

1        •   Negligent training (claim 16) under California Government Code § 815.5 against

2            all defendants. *Id*. at 37–38.

3        •   A standalone claims of respondeat superior (claim 17) against the City of Vallejo,

4            Officer Jodi Brown, Sergeant Steve Darden, Officer Zach Horton and Fire Captain

5            Jason Goodner. *Id*. at 38.

6        •   A standalone claim for private attorneys fees (Code Civ. Proc. § 1021.5) (claim

7            18) against all defendants. *Id*. at 38–39.[5]

8        •   A standalone claim of punitive damages (claim 19) against VPD Chief Shawny

9            Williams, VPD Former Chief Andrew Bidou, Officer Jodi Brown, Sergeant Steve

10           Darden, Officer Zach Horton and Fire Captain Jason Goodner. *Id*. at 39.

11        •   A standalone claim of injunctive relief (claim 20) against City of Vallejo, VPD

12            Chief Shawny Williams, Officer Jodi Brown and Sergeant Steve Darden. *Id*. at

13            39–40.

14        As relief, plaintiff prays for a permanent injunction, declaratory relief and an order

15 removing Officer Jodi Brown from active duty, as well as damages, fees and costs. *Id.* at 38–41.

16        The City of Vallejo moves to dismiss plaintiff's claims under Federal Rule of Civil

17 Procedure 12(b)(6) against most named defendants, except certain claims against the City and

18 Officers Brown and Horton, and to strike what it says are duplicative claims under Federal Rule

19 of Civil Procedure 12(f). *See generally* Mot.; *id.* at 17. Plaintiff opposes the motion, and the

20 matter is fully briefed. *See* Opp'n, ECF No. 11; Reply, ECF No. 15. The court submitted the

21 matter on the papers, ECF No. 16, and resolves it here as explained below.

22 **II.**    **MOTION TO DISMISS**

23        A party may move to dismiss for "failure to state a claim upon which relief can be

24 granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a

25 "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.

26 *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court

---

[5] Plaintiff refers to the California "Civil Code," but his specific request for relief indicates he seeks relief under § 1021.5 the California Code of Civil Procedure. FAC ¶ 123.

1   assumes all factual allegations are true and construes "them in the light most favorable to the

2   nonmoving party." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).

3   If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion

4   must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

5          A complaint need contain only a "short and plain statement of the claim showing that the

6   pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl.*

7   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned

8   accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at

9   678. In the same vein, conclusory or formulaic recitations elements do not alone suffice. *Id.*

10  (quoting *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task

11  drawing on "judicial experience and common sense." *Id.* at 679.

12         These same standards apply to claims against municipal governments under § 1983.

13  *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). In particular, a

14  plaintiff's allegations "may not simply recite the elements" of a claim under *Monell*. *See id.*

15  (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The complaint must "contain

16  sufficient allegations of underlying facts to give fair notice" of the plaintiff's claims and allow the

17  municipal government "to defend itself effectively." *Id.* (quoting *Starr*, 652 F.3d at 1216). The

18  plaintiff's allegations must also "plausibly suggest an entitlement to relief, such that it is not

19  unfair to require the opposing party to be subjected to the expense of discovery and continued

20  litigation." *Id.* (quoting *Starr*, 652 F.3d at 1216).

21  **III.   ANALYSIS**

22         Defendants argue the court should dismiss former Chief Andrew Bidou, Captain Jason

23  Goodner, current Chief of Police Shawny Williams and Lt. Steve Darden because plaintiff's first

24  amended complaint does not include any facts that would support any claim against any of them.

25  Mot. at 6–11. Defendants also move to dismiss claims five through nine, thirteen, fourteen, and

26  sixteen through twenty against all defendants. *See generally* Mot. Defendants do not move to

27  dismiss claims one through four against Officer Brown; claims two and three against Officer

28  Horton; claims ten and eleven against the City of Vallejo and Officer Brown; claim twelve

7

1  against the City of Vallejo, Officer Brown, and Officer Horton; and claim fifteen against the City

2  of Vallejo and Brown.[6]  *Id.*  The court addresses defendants' arguments regarding the federal

3  claims first, the state claims second and then other claims as well at the end.

4      **A.**    **Federal Claims**

5          **1.**    **Fourth Amendment Claims (Claims 1, 2, 3 and 4[7]; Darden, Horton**
6                    **and Goodner)**

7               a)    Lt. Darden

8      Plaintiff asserts Fourth Amendment claims against Lt. Darden on theories of excessive

9  force, false arrest, false imprisonment, and failure to render medical aid.  *See generally* FAC

10  (claims 1 to 4).  Defendants argue all claims against Lt. Darden should be dismissed.  Mot. at 11–

11  12.

12      Regarding the excessive force claim, "[a]ll claims of excessive force, whether deadly or

13  not, are analyzed under the objective reasonableness standard of the Fourth Amendment as

14  enunciated in *Graham* and *Garner*."  *Blanford v. Sacramento Cty.*, 406 F.3d 1110, 1115 (9th Cir.

15  2005).  This standard requires the court to "balance the nature and quality of the intrusion on the

16  individual's Fourth Amendment interests against the importance of the governmental interests

17  alleged to justify the intrusion."  *Gomez v. City of Vacaville*, 483 F. Supp. 3d 850, 862 (E.D. Cal.

18  2020) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  Here, Mr. Raudelunas alleges only

19  that Lt. Darden "rudely" addressed him at the scene; specifically, when Mr. Raudelunas told him

---

[6] At the outset of their motion to dismiss, defendants ask the court to "please take notice" that "Defendant City of Vallejo will and hereby does move for an order dismissing Defendants, Jason Goodner, Andrew Bidou, Steve Darden, and Shawny Williams from the First Amended Complaint, dismissing all causes of action except the Fourth Amendment and false arrest claims against Zach Horton, and dismissing Plaintiff's second, third, fourth, fifth, sixth, seventh, eighth, ninth, thirteenth, fourteenth, sixteenth, seventeenth, eighteenth, nineteenth, and twentieth causes of action."  Mot. at i-ii. Defendants' subsequent memorandum of points and authorities is not consistent with this request.  *See generally* Mot. at 5-19.  For example, defendants do not explain why the court should dismiss claims one through four against Brown, but defendants do argue that two Fourth Amendment claims against Officer Horton should be dismissed.  *Id.*  The court's understanding of the unchallenged claims is based on the substantive arguments defendants make in their motion's memorandum of points and authorities.

[7] The court addresses defendants' motion to strike claims 2, 3 and 4 in their entirety as duplicative separately below.

1    he had back problems, Lt. Darden responded, "You should have thought about that before you

2    took off." *See* FAC ¶ 33.  The court finds this statement alone does not allege a violation of

3    Mr. Raudelunas's Fourth Amendment rights on theories of excessive force because there is no

4    pleading of intrusion or force that Lt. Darden exerted on Mr. Raudelunas.

5        "To prevail on [a] § 1983 claim for false arrest and imprisonment, [plaintiff must]

6    demonstrate that there was no probable cause to arrest him." *Cabrera v. City of Huntington Park*,

7    159 F.3d 374, 380 (9th Cir. 1998).[8]  "Probable cause exists when there is a fair probability or

8    substantial chance of criminal activity." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 918 (9th Cir.

9    2012) (quoting *United States v. Patayan Soriano,* 361 F.3d 494, 505 (9th Cir. 2004))  (internal

10   quotation omitted).  "It is well-settled that the determination of probable cause is based upon the

11   totality of the circumstances known to the officers at the time of [the arrest]." *Id.*  Here, plaintiff

12   does not allege facts to support Lt. Darden's personal use of force against him or participation in

13   placing him under arrest.  *See generally* FAC.  For the same reasons that plaintiff did not state a

14   claim against Lt. Darden for false arrest, he does not state a claim for false imprisonment.[9]

15       Regarding the claim of failure to render medical aid, it too is not supported by the

16   pleadings, given that Mr. Raudelunas did not verbalize a need for immediate medical attention.

17   Ex. A at 3:05–8:53.

---

[8] "[R]ights enforceable through § 1983 are creatures of federal substantive law." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 937 (9th Cir. 2003).  Among these laws is the Fourth Amendment, which "will only apply to governmental conduct that can reasonably be characterized as a 'search' or a 'seizure.'" *United States v. Attson*, 900 F.2d 1427, 1429 (9th Cir. 1990).  Here, plaintiff suggests the Fourth Amendment gives rise to distinct "false arrest" and "false imprisonment" claims.  Plaintiff's false arrest claim is based on defendants' "arresting [plaintiff] without probable cause," FAC ¶ 53, while the false imprisonment claim is based on defendants' subjecting plaintiff to "an unreasonable search and seizure of his person" and "loss of physical liberty," *id.* ¶ 56.  For the purposes of a § 1983 action alleging "false arrest" and "false imprisonment," courts have treated the claims interchangeably and analyzed them concurrently. *See, e.g., Garcia v. Cty. of Merced*, 639 F.3d 1206, 1213 (9th Cir. 2011); *Porter v. City of Los Angeles*, No. CV 15-7657 PSG (KSX), 2016 WL 11129524, at *6 (C.D. Cal. Sept. 15, 2016).  Courts also "analyze state false arrest and false imprisonment claims," which are "not separate torts" under California law, *Watts v. Cty. of Sacramento*, 256 F.3d 886, 891 (9th Cir. 2001), "under the same rubric as § 1983 claims based on false arrest under the Fourth Amendment." *Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 927 (N.D. Cal. 2014).  For these reasons, this court evaluates plaintiff's "false arrest" and "false imprisonment" claims jointly.

[9] *See* discussion *supra* at note 7.

1    The court dismisses the Fourth Amendment claims against Lt. Darden with leave to

2    amend, only if possible within the confines of Rule 11.

3                          b)    Fire Captain Jason Goodner

4    Plaintiff asserts Fourth Amendment claims against Captain Goodner on theories of

5    excessive force, false arrest, false imprisonment, and failure to render medical aid.  *See generally*

6    FAC (claims 1 to 4).  Defendants argue all claims against Captain Goodner should be dismissed

7    for "all of the reasons" the claims against Lt. Darden should be dismissed.  Mot. at 11.

8    Plaintiff offers no evidence that Captain Goodner used "excessive force," or any force at

9    all.  *See generally* FAC.  Plaintiff alleges Captain Goodner was at the scene of plaintiff's traffic

10   collision but does not allege Captain Goodner used force against him or participated in his arrest.

11   FAC ¶¶ 49-50.  Plaintiff does not state a claim for excessive force against Captain Goodner.

12   Plaintiff's Fourth Amendment claim for false arrest and false imprisonment against Captain

13   Goodner fail for similar reasons—at no point did Captain Goodner participate in placing plaintiff

14   under arrest.  Finally, plaintiff's failure to verbalize a need for medical attention absolves Captain

15   Goodner of liability for failure to render medical aid under the Fourth Amendment.  Ex. A at

16   3:05–8:53.

17   Accordingly, all claims against Fire Captain Jason Goodner are dismissed without leave to

18   amend because amendment would be futile.  *See Sylvia Landfield Tr. v. City of Los Angeles*,

19   729 F.3d 1189, 1196 (9th Cir. 2013).

20                          c)    Officer Horton

21   Defendants move to dismiss the excessive force and failure to render medical aid claims

22   brought against Officer Horton.  Mot. at 12.[10]

23   Regarding the excessive force claim, Mr. Raudelunas contends his complaint provides

24   "sufficient foundation" to overcome defendants' motion to dismiss and he emphasizes that

25   Officer Horton "aggressively" handcuffed him despite his complaints of a "bad back."  Opp'n at

---

[10] The City does not move to dismiss Mr. Raudelunas's Fourth Amendment claims for false arrest and false imprisonment against Officer Horton.  *See* Mot. at 12**.**

1    8. Mr. Raudelunas does not allege the fact of aggressive handcuffing in his amended complaint.

2    As currently pled, Mr. Raudelunas's allegation only that he was handcuffed "aggressively" does

3    not state a claim for excessive force.  *Shaw v. City of Redondo Beach*, No. CV05-0481

4    SVWFMOX, 2005 WL 6117549, at *7 (C.D. Cal. Aug. 23, 2005) ("In the absence of any

5    complaints of pain or requests to loosen the handcuffs or other evidence of observable pain or

6    physical injury, a reasonable officer need not credit a single complaint of tightness.")  Indeed,

7    Mr. Raudelunas does not allege he experienced any pain as a result of the handcuffing, or any

8    tightness while handcuffed.

9        Regarding the claim that Officer Horton failed to render medical aid, it too is not

10   supported by the pleadings, given that Mr. Raudelunas did not verbalize a need for immediate

11   medical attention.  *See* Ex. A at 3:05–8:53.  Accordingly, the court dismisses the first and fourth

12   claim against Officer Horton, but with leave to amend if possible.

13               **2.      Conspiracy (Claim 5; Defendants Brown, Darden and Goodner)**

14       With respect to plaintiff's § 1985 conspiracy claim against defendants Jodi Brown, Jason

15   Goodner, and Steve Darden, Mr. Raudelunas alleges defendants denied him equal protection of

16   law based on the witness statement Captain Goodner gave Officer Brown regarding the incident.

17   Specially, Mr. Raudelunas quotes Captain Goodner stating: "I saw an uncooperative guy at the

18   scene of the collision, and you asked for his license and registration.  He threw it at you because

19   you would not take it apart.  He basically said, 'fuck it,' I am going to leave.  He backed up and it

20   looked like he almost hit you.  I was moving our engines to move it in case he backed up into us.

21   He peeled out of the parking lot and you went after him."  FAC ¶ 31.  Mr. Raudelunas alleges

22   Officer Brown "recruited" Captain Goodner "to provide an exculpatory statement that attempts to

23   justify her use of force, entering into an unlawful conspiracy to deprive Plaintiff of his civil

24   rights." Opp'n. at 2.

25       Defendants argue plaintiff's amended complaint does not allege any facts to support

26   conspiracy claims against Officer Brown, Lt. Darden, and Captain Goodner.  Mot. at 7.  The court

27   agrees Captain Goodner's statement and Mr. Raudelunas's conclusory allegations of conspiracy,

28   offered alone, does not suffice to plead a conspiracy claim.  To successfully bring a claim under

§ 1985, Mr. Raudelunas must allege and prove four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  Additionally, the second element requires Mr. Raudelunas to identify a legally protected right and demonstrate a deprivation of that right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Given the dearth of factual allegations other than Captain Goodner's statement in the amended complaint, plaintiff does not state a claim for conspiracy.

Defendants also argue "Goodner's report to Officer Brown is privileged pursuant to California Civil Code § 47 . . . and Officer Brown and Lt. Darden are entitled to prosecutorial immunity."  Mot. at 13 (relying on *Devis v. Bank of Am.*, 65 Cal. App. 4th 1002, 1007–08 (1998) (finding citizen's report to police is privileged communication and citizen is protected from liability on that basis)) (citing Government Code § 821.6, which provides "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.").  The court agrees Captain Goodner's report to the police was a privileged communication under California Civil Code § 47 and dismisses all claims against him without leave to amend.  *Johnson v. Symantec Corp.*, 58 F. Supp. 2d 1107, 1109 (N.D. Cal. 1999) (listing line of cases "cloaking police reports" with absolute privilege).  The court dismisses the claims against Officers Brown and Lt. Darden with leave to amend, if possible.

### 3. *Monell* Claims (Claims 6, 7, 8 and 9; City of Vallejo, Williams and Bidou)

Mr. Raudelunas claims defendant City of Vallejo, as well as VPD Former Chief Andrew Bidou and VPD Chief Shawny Williams, directed, encouraged, allowed and/or ratified the use of excessive force against plaintiff in violation of his Fourth Amendment rights.  FAC ¶¶ 66–89.

1   His four separate *Monell* claims assert ultimate policymaker liability, failure to train and

2   supervise, pattern and practice, and ratification, respectively.  *Id.*

3          Generally, local governing entities can be sued directly under 42 U.S.C. § 1983 for an

4   unconstitutional custom, policy or practice.  *Monell*, 436 U.S. at 690–91.  Ultimately to establish

5   the City's liability on his *Monell* claims, Mr. Raudelunas must show "(1) he possessed a

6   constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy

7   amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the

8   moving force behind the constitutional violation."  *Sweiha v. Cty. of Alameda*, No. 19-CV-03098,

9   2019 WL 48482227, at *3 (N.D. Cal. Oct. 1, 2019) (citing *Plumeau v. Sch. Dist. No. 40 Cty. of*

10  *Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).  A § 1983 claim "against a municipal officer is

11  equivalent to a suit against the [governmental] entity . . ."  *Ctr. For Bio-Ethical Reform, Inc. v.*

12  *L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008).  Thus, Mr. Raudelunas's claims

13  against Chief Williams and Former Chief Bidou, to the extent the claims are official capacity

14  claims,[11] are subsumed by his *Monell* claims under § 1983 against the City of Vallejo, the

15  governmental employer.

16         Regarding Claim 6, the ultimate policymaker claim, a plaintiff at this stage must plead

17  sufficient factual allegations demonstrating that the individual who committed the constitutional

18  tort was an official with final policy-making authority and that the challenged conduct was thus

19  an act of official government policy.  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992),

---

[11] Plaintiff indicates in the caption of the complaint, and elsewhere, that he sues Chief Williams and Former Chief Bidou in their individual capacities.  FAC at 1 (caption), ¶ 8 (separate sentences say Williams sued individually but also officially), ¶ 9 (similar language used for Bidou but saying sued only in individual capacity).  Because the only substantive claims in which plaintiff names Williams and Bidou are the four *Monell* claims, the court construes his pleading as naming them in their official capacities only.  To the extent plaintiff may in fact have individual capacity claims against these defendants based on alleged supervisory liability, he may include them in an amended complaint.  *See Solis v. City of Vallejo*, No. 2:14-CV-00483, 2014 WL 2768847, at *4 (E.D. Cal. June 18, 2014) (quoting *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 961 (9th Cir. 2010)) (internal quotations omitted) (there may be "supervisorial liability under § 1983 where the supervisor was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation").  Plaintiff's counsel is strongly cautioned, however, to clarify the bases for liability in any further amended pleadings and ensure his claims track the applicable law.

1  *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir.

2  2016).  Plaintiff here alleges only in generalized terms that defendants Chief Williams and

3  Former Chief Bidou "directed, encouraged, allowed" other defendants, namely Brown, Horton

4  and Darden, to commit a laundry list of unconstitutional acts or omissions, and that Williams and

5  Bidou "had direct knowledge of the facts of this incident" and nonetheless "approved of the

6  conduct" of the other defendants.  FAC ¶¶ 67-68.  Plaintiff alleges in a conclusory manner that

7  Williams and Bidou "deprived Plaintiff of his particular rights under the United States

8  Constitution," *id.* ¶ 69, and at the relevant times had "final policymaking authority" for the City

9  of Vallejo, *id.* ¶¶ 70-71.  He also weaves in references to inadequate training and ratification,

10  covered by other *Monell* claims.  *Id.* ¶ 68.  The pleadings do not sufficiently allege that either

11  Williams or Bidou committed an unconstitutional tort himself, as required to state an ultimate

12  policymaker *Monell* claim.

13       To prevail on Claim 7, failure to train, such a theory may also give rise to a *Monell* claim

14  based on "longstanding practice or custom."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737

15  (1989).  A plaintiff can establish the existence of a such a custom by pleading a formal

16  government policy constituting a standard operating procedure of the local government entity

17  sued.  *Gillette,* 979 F.2d at 1346.  Inadequacy of police training may only give rise to § 1983

18  liability under *Monell* when it "amounts to deliberate indifference to the rights of persons with

19  whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

20  In pleading this claim, plaintiff makes only conclusory allegations – that the City's training

21  policies "were not adequate to train its police officers to handle the usual recurring situations

22  which they must deal [sic]," that the City "was deliberately indifferent to the known or obvious

23  consequences of its failure to train," and that the failure to train "caused the deprivation of the

24  plaintiff's rights."  FAC ¶¶ 76-78.  These allegations do not contain sufficient factual matter so as

25  to make the claim plausible.

26       As for Claim 8, a plaintiff may prove the existence of a "longstanding practice or custom"

27  with "evidence of repeated constitutional violations for which the errant [City] officials were not

28  discharged or reprimanded."  *Gillette*, 979 F.2d at 1349.  "Prior incidents involving lawsuits

14

1   alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient

2   for *Monell* liability purposes in the face of a motion to dismiss." *Bagos v. Vallejo*, No. 2:20-CV-

3   00185, 2020 WL 6043949, at *5 (E.D. Cal. Oct. 13, 2020). However, repeated constitutional

4   violations must be substantially similar in character to establish a *Monell* claim. *See McCoy v.

5   City of Vallejo*, No. 219CV001191, 2020 WL 374356, at *4 (E.D. Cal. Jan. 23, 2020). Here,

6   plaintiff's pleading of this claim, like other claims reviewed above, strays into other areas as well,

7   including insufficient training and ratification. FAC ¶¶ 81, 83. It does also rely on preceding

8   allegations, *id.* ¶ 79; the preceding allegations include a statement of facts, which sets out a listing

9   of twenty-one incidents in which VPD officers allegedly used excessive force, *see id.* ¶ 36. Six of

10  those incidents involve officer-related shootings; in five of those the unarmed person died after

11  being shot. *Id.* Defendants contend plaintiff's list of lawsuits filed against the City over the

12  course of the last decade does not support plaintiff's eighth claim because none of the incidents

13  cited involved a person driving away after being told they could not leave followed by the use of

14  a taser. Mot. at 14. Specifically, defendants argue plaintiff's claims should be dismissed because

15  his allegations are not sufficiently similar to the other examples of excessive force he cites. *Id.*

16  The court agrees the incidents plaintiff alleges are not sufficiently similar for him to survive a

17  motion to dismiss the longstanding practice or custom claim. The cases he cites involve

18  excessive force by an officer culminating in fatal shootings, or individuals being kicked, punched

19  and knocked unconscious. *See, e.g.*, FAC ¶ 36 (a)–(s). Here, Mr. Raudelunas was tased once,

20  handcuffed, and arrested. FAC ¶¶ 28–30. None of the prior incidents he cites involves these

21  facts.

22          Finally among the *Monell* claims, Claim 9, ratification, requires proof that an official with

23  "final policy-making authority" ratified a subordinate's unconstitutional decision or action and

24  the basis for it. *Gillette*, 979 F.2d at 1346–47. As noted above, a single constitutional violation

25  ordinarily is insufficient to establish a longstanding practice or custom, *Christie v. Iopa*, 176 F.3d

26  1231, 1235 (9th Cir. 1999), but there are situations in which isolated constitutional violations are

27  sufficient to establish a municipal "policy." *See id.* One such situation is when the final

28  policymaker "ratifie[s]" a subordinate's actions and the basis for it. *Id.* at 1238–39 (quoting *City*

15

1  *of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  Thus, ratification requires knowledge of

2  the alleged constitutional deprivation.  *Id.* at 1239.  Here, plaintiff alleges simply that Chief

3  Williams and Former Chief Bidou "ratified Defendant Jodi Brown's acts, that is [they] knew of

4  and specifically made a deliberate choice to approve of [] Brown's act and the basis for it."

5  FAC ¶ 89.  A preceding section of the complaint titled "ratification, adoption and authorization,"

6  incorporated by reference, is even more general without any allegations regarding Williams or

7  Bidou.  FAC ¶ 85; *id.* ¶¶ 46-48.  None of these allegations provide sufficient factual detail to meet

8  the plausibility threshold.  Additionally, plaintiff's argument that an administrative law judge has

9  previously found Officer Jodi Brown to "lack credibility . . . in a similar matter" involving the use

10  of excessive force with a taser is unavailing.  Opp'n at 3 (citing FAC ¶ 23 (noting 2015 case in

11  which Officer Brown was defendant for unlawful use of taser)).  The administrative law judge's

12  finding does not support an inference, as would be needed here, that Former Police Chief Bidou

13  acting in his official capacity ratified Officer Brown's conduct in the incident underlying the

14  operative complaint in this matter by deciding not to discipline Officer Brown six years ago.

15      Accordingly, the court grants defendants' motion to dismiss plaintiff's § 1983 *Monell*

16  claims against the City of Vallejo, with leave to amend if possible within the confines of Rule 11.

17  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no

18  request to amend the pleading was made, unless it determines that the pleading could not possibly

19  be cured by the allegation of other facts."  *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000)

20  (citations and internal quotation marks omitted).  Here, the court cannot say amendment would be

21  futile.  The court grants the motion to dismiss the *Monell* claims against Chief Williams as

22  redundant, without leave to amend.  *Ctr. For Bio-Ethical Reform,* 533 F.3d at 786 (defendant

23  sued in official capacity alongside public entity may be dismissed "as a redundant defendant").

24  The court grants the motion to dismiss the *Monell* claims against Former Chief Bidou without

25  leave to amend because he was not employed by the City of Vallejo when the underlying incident

26  occurred; thus, he could not have made a deliberate choice to endorse Officer Brown's decision to

27  tase Mr. Raudelunas and Brown's basis for making that decision, or any decision as relevant to

28  plaintiff's *Monell* claims.  *Sylvia Landfield Tr.*, 729 F.3d at 1196 ("Denial of leave to amend is

1    not an abuse of discretion where the district court could reasonably conclude that further

2    amendment would be futile.") (internal quotations omitted).

3        **B.     State Law Claims**

4        It is undisputed that plaintiff exhausted administrative remedies under California

5    Government Code § 910 *et seq*., when he filed an administrative claim for damages under the

6    California Tort Claims Act, presented it to the City of Vallejo, which it in turn denied. *See*

7    FAC ¶ 3.  The claim was stayed during the pendency of a parallel criminal matter, which was

8    dismissed on February 9, 2021. *Id*.  The court reviews the state claims below.

9            **1.     Assault (Claim 10; City of Vallejo, Brown, Horton)**

10       Plaintiff brings a claim for assault against the City of Vallejo, Officer Brown, and Officer

11   Horton.  Defendants move to dismiss the claim against Officer Horton.  FAC at 33.

12       "The elements of civil assault are: demonstration of an unlawful intent by one person to

13   inflict immediate injury on the person of another then present. The tort of assault is complete

14   when the anticipation of harm occurs. Mere words, however threatening, will not amount to an

15   assault." *A. A. P. v. Sierra Plumas Joint Unified Sch. Dist.*, No. 2:19CV00882 TLN CKD,

16   2021 WL 847812, at *5 (E.D. Cal. Mar. 5, 2021) (quotations and citations omitted).  Here,

17   Mr. Raudelunas alleges Officer Horton handcuffed him "aggressively" and alleges the arrest was

18   "unlawful."  Opp'n at 8.  Mr. Raudelunas does not allege facts showing it was Officer Horton's

19   intent to "inflict immediate injury" on him, nor does he allege actual injury or even anticipation of

20   harm.  The court thus dismisses the assault against Officer Horton with leave to amend, only if

21   possible.

22           **2.     Battery (Claim 11; City of Vallejo, Brown, Darden, Horton)**

23       Plaintiff brings a claim for battery against the City of Vallejo, Officer Brown, and Officer

24   Horton.  Defendants move to dismiss the claim against Officer Horton and Lt. Darden.

25       "Under state law, in a battery action against a police officer, a plaintiff must show that the

26   use of force was unreasonable." *Johnson v. Bay Area Rapid Transit*, 790 F. Supp. 2d 1034, 1074

27   (N.D. Cal. 2011).  Thus, for the same reasons plaintiff does not state a claim against Officer

1   Horton for excessive force, plaintiff does not state a clam for battery. The court also dismisses

2   the battery claim against Lt. Darden, with leave to amend, because plaintiff's complaint does not

3   allege Lt. Darden used any force against Mr. Raudelunas. *See generally* FAC. Instead, plaintiff

4   alleges Lt. Darden "ratifie[d] Defendant Brown's use of force." FAC ¶ 33. This does not amount

5   to battery.

6          **3.      False Arrest (Claim 12; City of Vallejo, Brown, Darden, Horton,**
7                   **Goodner)**

8          Plaintiff brings a claim for false arrest against the City of Vallejo, Officer Brown, Lt.

9   Darden, Officer Horton and Captain Goodner. Defendants do not move to dismiss this claim

10  against the City, Brown or Horton. The false arrest claim against Lt. Darden is dismissed with

11  leave to amend for the same reason the false imprisonment claim is dismissed with leave to

12  amend.[12] Likewise, the false arrest claim against Captain Goodner is dismissed without leave to

13  amend for the same reason the false imprisonment claim is dismissed without leave to amend.[13]

14         **4.      Bane Act (Claim 13; City of Vallejo, Officer Jodi Brown, Sergeant**
15                  **Steve Darden, Officer Zach Horton and Fire Captain Jason Goodner)**

16         Mr. Raudelunas contends he was "victimized" by defendants Brown, Horton, Goodner

17  and Darden, *see* Opp'n at 13 (citing FAC ¶¶ 103–105), when Officer Brown unjustifiably shot

18  him with a taser in his home's driveway. FAC ¶¶ 28–30. Defendants argue Mr. Raudelunas's

19  amended complaint is devoid of allegations that could support a claim under the Bane Act. Mot.

20  at 15. The Bane Act "protects individuals from conduct aimed at interfering with rights that are

21  secured by federal or state law, where the interference is carried out 'by threats, intimidation or

22  coercion.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (quoting *Venegas*

23  *v. Cty. of Los Angeles*, 153 Cal. App. 4th 1230, 1232 (2007)). When a Bane Act claim is based

24  on an alleged federal constitutional violation, as here, plaintiffs may rely on the same allegations

25  to prove both that the defendant deprived them of a constitutional right and threatened,

26  intimidated or coerced them under the Bane Act. *See id.* at 1043 (citing *Cornell v. City & Cty. of*

---

[12] *See* discussion *supra* at page 9.

[13] *See* discussion *supra* at page 10.

*San Francisco*, 17 Cal. App. 5th 766, 798-99 (2017)) ("[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged."). A complaint must also include factual allegations that allow the court to infer the defendant had a "specific intent" to violate the plaintiff's rights. *See id.* (quoting *Cornell*, 17 Cal. App. 5th at 801).

Mr. Raudelunas's complaint does not meet this pleading standard. His conclusory allegations do not support an inference of the required intent for defendants to violate his Bane Act rights. Additionally, the video footage the court has incorporated into the complaint is consistent with defendants' description of the events that led to Officer Brown's deploying her taser. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court is not "required to accept as true allegations that contradict . . . the Complaint . . . "). Specifically, Officer Brown warned Mr. Raudelunas repeatedly that he was not permitted to leave the scene of the accident. Ex. A at :29–:35. Mr. Raudelunas drove away and headed home, a short distance away. *See id*. Plaintiff left the scene of the accident, was followed to his home by Officer Brown, and then was tased once by Officer Brown. *Id*. at 1:30–3:04.

Mr. Raudelunas's Bane Act claims against Brown, Horton, and Darden are dismissed with leave to amend, if possible within the confines of Rule 11. His Bane Act claim against Captain Goodner is dismissed without leave to amend.

### 5. Intentional Infliction of Emotional Distress (Claim 14; Officer Jodi Brown)

Defendants argue plaintiff has not alleged conduct by Officer Brown that is so "extreme and outrageous" as to exceed what is "usually tolerated in a civilized society." Mot. at 16-17 (relying on *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 499 n.5(1970)). Mr. Raudelunas contends his allegations show that Officer Brown "knew that Tasering him" would cause him to lose muscle control and fall to the concrete driveway. Opp'n at 13 (citing FAC ¶¶ 23, 106–108).

In California, one of the essential elements of a prima facie case of intentional infliction of emotional distress is "extreme and outrageous conduct by the defendant." *Yurick v. Superior Ct.*, 209 Cal. App. 3d 1116, 1123 (Ct. App. 1989) (internal quotation omitted). The court finds

1    Mr. Raudelunas's allegations do not plead sufficient facts with regard to the "extreme and

2    outrageous" element, while the remaining elements are adequately pled.  *King v. AC & R Advert.*,

3    65 F.3d 764, 769 (9th Cir. 1995) (quoting *Cole v. Fair Oaks Fire Prot. Dist.,* 43 Cal. 3d 148, 233

4    (1987)).

5           The court assumes all factual allegations are true and construes them in the light most

6    favorable to Mr. Raudelunas and finds Officer Brown's actions were not so extreme as to "exceed

7    all bounds of that usually tolerated in a civilized society."  *Schneider v. TRW, Inc.,* 938 F.2d 986,

8    992 (9th Cir. 1991) (quoting *Trerice v. Blue Cross of California*, 209 Cal. App. 3d 878, 883 (Ct.

9    App. 1989).  Officer Brown followed Mr. Raudelunas after he had fled the scene of an accident;

10   when Mr. Raudelunas exited his vehicle, Officer Brown directed Mr. Raudelunas to "get on the

11   ground" and when Mr. Raudelunas did not comply, she deployed her taser one time, causing

12   Mr. Raudelunas to fall to the ground.  Ex. A at 1:30–3:04.  Because Mr. Raudelunas does not

13   allege actions that constitute "outrageous conduct" as a matter of law, *cf. Gravelet-Blondin v.*

14   *Shelton*, 728 F.3d 1086, 1100 (9th Cir. 2013) (explaining a person's background can make them

15   "particularly susceptible to emotional distress" as result of tasing), the court dismisses his

16   intentional infliction of emotional distress claim with leave to amend, if possible within the

17   confines of Rule 11.

18               **6.       Negligence (Claim 15; Against All Defendants)**

19          Defendants move to dismiss the negligence claim against VPD Chief Williams, VPD

20   Former Chief Bidou, Officer Horton, Captain Goodner, and Lt. Darden.  Defendants do not move

21   to dismiss the negligence claim against the City of Vallejo or Officer Brown.  *See generally* Mot.

22          Plaintiff brings the negligence claim pursuant to sections 820 and 815.2 of the

23   Government Code, which make public employees and public entities liable for negligence to the

24   same extent private employees or entities would be liable.  FAC ¶ 110.  To state a claim for

25   negligence, Mr. Raudelunas must allege facts showing defendants were negligent, he was

26   harmed, and defendants' negligence was a substantial factor in causing that harm.  CACI

27   No. 400.  "It is fundamental that a negligent act is not actionable unless it results in injury to

28   another."  *Fields v. Napa Mill. Co*., 164 Cal. App. 2d 442, 447 (1958).

1    Mr. Raudelunas claims defendants "negligently and without due care violently arrested

2    Plaintiff without legal justification," resulting in plaintiff being "injured." *Id.* ¶ 111.  He

3    continues, "The violent arrest of Plaintiff at his home occurred as a result of the absence of due

4    care for the safety of others and constituted an unreasonable, unwarranted, and excessive use of

5    force and manifested an unreasonable risk of injury to Plaintiff." *Id.* ¶ 112.  Earlier in his

6    complaint, Mr. Raudelunas alleged his "significant" injury resulted "from the Taser and the fall

7    therefrom, as well as emotional distress, fear, terror, anxiety, humiliation and a loss of sense of

8    security, dignity and pride." *Id.* ¶ 34.

9    As to defendants Captain Goodner and Lt. Darden, neither participated in

10   Mr. Raudelunas's arrest. *See generally* FAC.  Thus, neither could have caused any of the injuries

11   stemming from his arrest.  Beyond the allegation that Officer Horton "aggressively" handcuffed

12   him, Mr. Raudelunas does not allege any facts indicating that Officer Horton "violently arrested

13   Plaintiff without legal justification," nor does he specify what injuries, if any, Officer Horton

14   substantially caused.  Opp'n at 8.  Indeed, Mr. Raudelunas's "significant" injuries appear to have

15   stemmed solely from the conduct of Officer Brown, who defendants do not move to dismiss.

16   FAC ¶ 34.  Plaintiff does not state a claim against Former Chief Bidou because he does not allege

17   any facts showing a substantial connection between Chief Bidou's actions and any injury to

18   himself. *See generally* FAC.  Finally, plaintiff cannot state a claim for negligence against Chief

19   Williams given that he asserts the same claim against the City of Vallejo, rendering the claim

20   redundant.

21   The negligence claims against Chief Williams and Captain Goodner are dismissed without

22   leave to amend.  The negligence claims against Former Chief Bidou, Officer Horton, and

23   Lt. Darden are dismissed with leave to amend, if possible.

24                    **7.    Negligent Training (Claim 16; Against All Defendants)**

25   Defendants move to dismiss the negligent training claim against all defendants. Mot. at

26   22.

27   /////

28   /////

21

1    In Mr. Raudelunas's opposition, he claims defendants are liable for negligent training

2    under California Government Code § 815.6.[14]  Government Code § 815.6 provides a private

3    right of action against a public entity for breach of a mandatory duty, prescribing three discrete

4    requirements that must be met before governmental entity liability may be imposed: "(1) an

5    enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the

6    kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and

7    (3) breach of the mandatory duty must be a proximate cause of the injury suffered."  *San Mateo*

8    *Union High Sch. Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 428 (2013).  Because the first

9    element is not adequately pled, the court must dismiss.

10    Defendants argue Mr. Raudelunas does not identify a single constitutional provision,

11    statute, or charter that imposes a mandatory duty on the City.  Mot. at 17.  A review of the

12    amended complaint confirms it is devoid of factual allegations that clearly demonstrate which

13    mandatory duty the City allegedly breached.  Plaintiff alleges simply that defendant breached

14    "Cal. Govt. Code § 815.5 [sic]" but does not demonstrate how this allegation tracks the test for

15    815.6 liability.

16    Defendants' motion to dismiss this claim is granted with leave to amend, if possible

17    within the confines of Rule 11, except for the claim against Captain Goodner, which is dismissed

18    without leave to amend.

19    **C.      Motion to Strike Duplicative Claims (Claims 2, 3, 4, 7, 8, 9)**

20    Defendants move to strike Mr. Raudelunas's duplicative causes of action to streamline

21    plaintiff's complaint.  Mot. at 17.  Defendants make no argument that Mr. Raudelunas's various

22    requests for damages are "redundant, immaterial, impertinent, or scandalous[.]" Fed. R. Civ. P.

23    12(f).  Defendants instead argue that Mr. Raudelunas "cannot assert four separate and distinct

24    causes of action arising from the same underlying conduct."  Mot. at 17.  The Ninth Circuit

25    cautions that "read[ing] Rule 12(f) in a manner that allow[s] litigants to use it as a means to

26    dismiss some or all of a pleading . . . would be creating redundancies within the Federal Rules of

---

[14] In his first amended complaint, plaintiff brought his negligent training claim under
Government code § 815.5.  FAC at 37.

22

1   Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later

2   stage in the proceedings) already serves such a purpose." *Whittlestone, Inc. v. Handi-Craft Co.*,

3   618 F.3d 970, 974 (9th Cir. 2010).  The court denies defendants' motion to strike Mr.

4   Raudelunas's duplicative claims.

5         **D.     Theories of Liability and Remedies (Claims 17 and 18 against all defendants;**
6                  **claim 19 against VPD Chief Shawny Williams, VPD Former Chief Andrew**
7                  **Bidou, Officer Jodi Brown, Sergeant Steve Darden, Officer Zach Horton and**
8                  **Fire Captain Jason Goodner; claim 20 against City of Vallejo, VPD Chief**
9                  **Shawny Williams, Officer Jodi Brown and Sergeant Steve Darden)**

10        Defendants argue the court should dismiss Mr. Raudelunas's claims for respondeat

11   superior, attorney's fees, punitive damages and injunctive relief because these are not causes of

12   action but rather theories of liability.  Mot. at 18.  Mr. Raudelunas counters these claims are

13   included in his first amended complaint to provide defendants with "express notice" of the relief

14   he seeks.  Opp'n at 15 (citing Fed. R. Civ. Proc. 8(a)(3)).

15        Federal Rule of Civil Procedure 8(a)(3) requires that a complaint include a request for

16   relief:

17            A pleading that states a claim for relief must contain:
18            (1) a short and plain statement of the grounds for the court's jurisdiction, unless the
19            court already has jurisdiction and the claim needs no new jurisdictional support;
20            (2) a short and plain statement of the claim showing that the pleader is entitled to
21            relief; and
22            (3) a demand for the relief sought, which may include relief in the alternative or
23            different types of relief.

24   Fed. R. Civ. P. 8(a).

25        Here, Mr. Raudelunas goes beyond the scope of a short and plain statement demanding

26   relief, instead seeking to hold defendants liable based on a theory of respondeat superior, among

27   others.  A claim for respondeat superior allows for an employer to be held vicariously liable for

28   torts committed by an employee within the scope of employment.  In his amended complaint,

29   Mr. Raudelunas asserts the respondeat superior claim is alleged with particularity because the

30   claim incorporates by reference all preceding paragraphs.  "Respondeat superior is a common law

31   principle of secondary liability and generally summarizes the doctrine that a master or other

32   principal is responsible, under certain circumstances, for the conduct of a servant or other agent."

23

1  *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1577 n.28 (9th Cir. 1990) (internal quotations

2  omitted).  Other district courts have recognized that respondeat superior is not a standalone cause

3  of action, but rather a theory of liability.  *See, e.g., Gonzalez v. Nevada Dep't of Corr.*,

4  No. 2:12-CV-02143-RFB, 2015 WL 4711108, at *7 (D. Nev. Aug. 6, 2015) (same); *Fid. Nat.*

5  *Title Ins. Co. v. Castle*, No. C 11–00896 SI, 2011 WL 6141310, at *15 (N.D. Cal. Dec. 8, 2011)

6  (same).

7       Similarly, attorney's fees, punitive damages and injunctive relief also fall by the wayside

8  as currently pled because each is a theory of liability or remedy and should be alleged within the

9  specific cause of action by which Mr. Raudelunas seeks to hold defendants liable or included in

10  the concluding prayer for relief.  *See, e.g.*, *Garcia v. Capistrano Unified Sch. Dist.*, No.

11  SACV162111, 2017 WL 10543661, at *4 n.2 (C.D. Cal. May 1, 2017) ("attorney's fees are not a

12  cause of action but a remedy"); *Brown v. Adidas Int.*, 938 F. Supp. 628, 635 (S.D. Cal. 1996)

13  ("punitive damages provide a remedy—they do not constitute a separate cause of action"); *Desser*

14  *v. United States*, No. CV 13-09190, 2014 WL 4258344, at *11 (C.D. Cal. Aug. 27, 2014)

15  (quoting *Shell Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168 (1942)) ("Injunctive relief is a remedy

16  and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may

17  be granted.").

18       Therefore, the court finds all standalone theories of liability and remedies must be

19  dismissed but without prejudice to pleading them properly in any further amended complaint.

20  **IV.   CONCLUSION**

21       The court **grants** defendants' motion to dismiss (ECF No. 9) **in part and denies it in**

22  **part** as follows:

23        &bull;  The court dismisses all § 1983 *Monell* claims (6, 7, 8 and 9) with leave to amend

24            except for those against VPD former Chief Andrew Bidou, and against VPD Chief

25            Shawny Williams, in his official capacity, are dismissed without leave to amend.

26        &bull;  The court dismisses plaintiff's § 1985 conspiracy claim (5) against defendants Jodi

27            Brown and Steve Darden with leave to amend. The conspiracy claim against Captain

28            Goodner is dismissed without leave to amend.

1      •   The court dismisses plaintiff's Fourth Amendment claims (1 through 4) against

2          Lt. Darden on theories of excessive force, false arrest, false imprisonment, and failure

3          to render medical aid with leave to amend.  The court also dismisses claims 11, 12,

4          and 15 against Lt. Darden with leave to amend.

5      •   The court dismisses all substantive claims (1, 2, 3, 4, 5, 12, 13, 15, 16) against Fire

6          Captain Jason Goodner without leave to amend.

7      •   The court dismisses the following substantive claims against Officer Zach Horton with

8          leave to amend: 1, 4, 10, 11, 13, and 15.

9      •   The court dismisses plaintiff's Bane Act claim (13) against City of Vallejo, Officer

10         Jodi Brown, Sergeant Steve Darden, and Officer Zach Horton with leave to amend.

11      •   The court dismisses plaintiff's intentional infliction of emotional distress claim (14)

12         against Officer Jodi Brown with leave to amend.

13      •   The court dismisses plaintiff's negligent training claim (16) against all defendants with

14         leave to amend, except as to Captain Goodner, which is dismissed without leave to

15         amend.

16      •   The court denies defendants' motion to strike duplicative claims (2, 3, 4, 7, 8, 9).

17      •   The court dismisses all standalone claims (17, 18, 19, 20) of liability and remedies

18         without prejudice to their appropriate inclusion in an amended complaint.

19      **Any amended complaint must be filed within twenty-one days**.

20      **The court denies defendants' request for judicial notice (ECF No. 7)**.

21      A status conference by videoconference is set for **February 24, 2022 at 2:30 p.m.** before

22 the undersigned.

23      This order resolves ECF Nos. 7 and  9.

24      IT IS SO ORDERED.

25 DATED:  February 2, 2022.

26

                                       CHIEF UNITED STATES DISTRICT JUDGE